The sum allowed to *R. Johnson, Esq.*, has not been objected to, and of course must be allowed, without interest.

With respect to the credit of $300, which is claimed as so much paid to *Scott* for professional services, and also the credit of $1350, which is claimed, it does not appear to this court that the plaintiff in error had authority to pay them out of the trust fund, or that he can claim a credit for them in the settlement of his account as trustee.    The commission allowed to this trustee is correct.

The order of the Chancellor, dated 26th January 1842, will be reversed, with costs, and the case to be remanded to chancery, in order that the account of *John Glenn*, as trustee, may be stated as herein directed, and that such further order be taken in the case as any of the parties interested may apply for.

DECREE REVERSED AND CAUSE REMANDED.

---

THE STATE OF MARYLAND, USE OF JOHN T. BOONE, *vs.* WILLIAM BRYAN, OF RICHARD, EX'R OF JOSEPH N. BURCH, JR.—*December* 1845.

Where an action was brought on the administration bond of *L B's* estate, for the use of *J*, and in the progress of the cause, the plaintiff asked leave to strike out the use, and enter the cause, for the use of the *administrator de bonis non* of *L B*, who proposed to claim an unadministered balance of money in the hands of the first administrators, and tendered a replication to that effect; the county court overruled the motion, from which the plaintiff entered an appeal on the record.   After this, the plaintiff being called to join in demurrer with the defendant, made default, and a *non suit* was entered against him.   HELD, that an appeal did not lie.

APPEAL from *Prince George's* county court.

This was an action of *debt*, commenced on the 26th September 1842, by the appellant against the appellee, who declared upon the bond of *S. Townshend, Joseph N. Burch, Jr.*, and others, of the 18th December 1830, conditioned, that *S. T.*, and *Maria Boone*, should perform the office of administrator, and administratrix, of *Levin Boone*, deceased.    After oyer, the defendant pleaded :—

1. That the said *J. N. B.*, *Jr.*, in his lifetime, from the time of the making of the said notes, to the time of his decease, performed everything in the condition aforesaid, mentioned, on the part of the said *J. N. B.*, *Jr.*, to be performed and kept, &c.

2. *Plene administravit*, of the assets of *J. N. B.*, *Jr.*, by the defendant, before the impetration of the writ original in this cause.

The plaintiff replied to the 1st plea, showing that *John T. Boone*, for whose use the writ was entered, was the residuary legatee, under the will of *Levin Boone*, and entitled to, &c., which the administrators were bound to pay, and had not paid, and traversed the 2nd plea.

The defendant, by his rejoinder, specially denied all the facts of the plaintiff's first replication; and tendered an issue to the country on the second replication, in which the plaintiff joined.

The defendant, then, also demurred generally to the replication of the plaintiff, in which demurrer the plaintiff joined, and, then, upon motion, had leave to withdraw his joinder in demurrer, which he did.

The plaintiff then moved the court to strike out the use of *J. T. B.*, and to enter this cause, for the use of *W. H. Tuck*, *a. d. b. n.* of *Levin Boone*, with the will annexed; and for leave to amend his pleadings, for the purpose of filing an amended replication. The breach assigned in this latter plea, was, that in April 1837, *S. T.* and *M. B.*, as administrators of *Levin Boone*, passed an account of the said administration, by which there remained due to the estate of *L. B.*, the sum of $907.82, and that the said administrators died, without completing their administration, or proceeding further therein, leaving debts and legacies unpaid, to the amount of $1000, and still due and unpaid; that letters *d. b. n.*, had been granted to the said *W. H. Tuck*, &c., on the estate of *L. B.* The said *W. H. T.*, also tendered a replication to the plea of *plene administravit*, which he traversed.

The court overruled the motion, and the plaintiff appealed.

The defendant then prayed the court, that the plaintiff might

join in his demurrer to the replication of the plaintiff, which the court directed, and "the plaintiff being solemnly required, comes not, neither is its writ of the State of *Maryland* further prosecuted, but makes default."

The county court then rendered judgment, that the plaintiff take nothing by its said writ, but that it be in mercy, &c., and for costs, from which judgment the plaintiff appealed *to this* court.

The cause was argued before ARCHER, C. J., DORSEY, CHAMBERS, SPENCE, MAGRUDER and MARTIN, J.

By W. H. TUCK for appellant.

This suit was brought on the bond of *Maria Boone* and *Singleton Townshend,* as administrators of *Levin Boone,* by residuary legatee, under his will, to recover the balance appearing to be due the estate, by the settlements in the Orphans court, the appellee's testator, *Joseph N. Burch,* being one of the sureties on the bond. The defendant pleaded performance and *plene administravit.* The plaintiff replied, setting forth the death of *Levin Boone;* the claim of *John Boone* under his will; the amount of the property that had come to the hands of the administrators; the balance due the estate, &c.; and averring a sufficiency of assets in the hands of the defendant to pay the claim. The defendant rejoined, denying the averments of the replication, and also filed a demurrer, to which there was a joinder by plaintiff.

At this stage of the pleadings, the plaintiff asked leave to withdraw the joinder in demurrer, which was granted. The plaintiff then moved the court to strike out the use of *John T. Boone,* and to enter the cause, for the use of *Wm. H. Tuck,* *administrator de bonis non cui testamento annexo,* of said *Levin Boone;* and for leave to amend the pleadings, for the purpose of filing an amended replication. This replication sets out:—

1st. The death of *Levin Boone;* the appointment and qualification of his administrators; the amount of estate that came to their hands; the balance due the estate on their settlement

with the court; their death, leaving this balance unadminis-
tered; the granting of letters *de bonis non*, to *W. H. Tuck;*
and that said balance is payable to him, as unadministered
assets of the deceased, &c.; and

2nd. That the defendant had assets of his testator to pay
this claim.

The court overruled this motion, and *non prossed* the case,
under a rule upon plaintiff to join in the defendant's demur-
rer. The plaintiff appealed, and will contend :—

1st. That the *administrator de bonis non*, was entitled to
sue the bond, and should have been substituted as *cestui que
use*, in the place of *John T. Boone.*

2nd. That the amended replication, being offered in con-
nection with the motion to change the use, and shewing the
right of the *administrator de bonis non* to sue, the amendment
should have been allowed.

The act of 1798, chap. 101, sub chap. 14, sec. 2, confined
the administration *de bonis non*, to "assets not converted into
money, and not distributed or delivered, or retained by the
former administrator under the court's direction." The act of
1820, chap. 174, sec. 3, enlarges the powers and duties of
*administrators de bonis non*, and extends them, in effect, to
every other description of property belonging to the deceased's
estate, at the death of the first administrator, whether it consist
of bonds, notes, accounts, evidence of debt or money; and
authorises the *administrator de bonis non* to sue the bond of
his predecessor, for their recovery.

The replication filed, in connection with the motion to
change the use, shews, that all the property of the deceased
was sold by the first administrators, and that no final account
was passed on his estate. Whether the proceeds remained in
their hands, in bonds or notes, or in money, the amount was
payable to the *administrator de bonis non.* It is obvious, under
this act, that he is the proper person to receive and disburse
these outstanding assets, whether they be payable ultimately
to creditors or legatees, and that the bond may be sued for his
use, all questions of fact, of course, being reserved for trial
upon the pleadings.

The next enquiry is, whether there was error in the court's refusal to change the use? The general rule is, that a public bond may be sued by any person interested in the recovery. *Kiersted et al., vs. State, use Sundry Persons,* 1 *Gill & John.,* 231, and the cases there cited. The same principle is recognised in the case of the *State vs. Dorsey et al.,* 3 *Gill & John.,* 75. In that case, a suit was commenced in the name of the State, for the use of the levy court of *Baltimore* county. Pending the action, that court became extinct, and another corporation was created in its stead. This fact was pleaded in bar of the action. The court, in their opinion, assimilate the case to a suit on a private bond, entered for the use of a third person. They say, "we can perceive no reason why, in the case of a public bond, with the privilege secured to any person interested to bring suit upon it, there should be any difference. In either case, the suit must be in the name of the obligee." "There is no necessity, for the purposes of the suit, to enter the use, whether it is brought for the benefit of an individual or a corporation; nor, if entered, does it make any difference to the defendant how it may vary or change, as to the person asserting the same right. It does not affect his defence, nor can any change of the use become a fit subject of plea. The declaration or replication assigns the breach, and discloses the use, or for what the suit is brought, and the defendant being thus advised, makes his defence accordingly. The judgment is in the name of the State, and will be for the use of whoever is entitled to the beneficial interest."

The appellant contends, that this authority is conclusive. The cases, in principle, are the same, though the question is raised in a different form. In that case it was presented by plea;—here it arises on motion. But with this the defendant has no concern. He must look to the State as the legal plaintiff. The *cestui que use* is not considered a party to the action, for any purpose, except as a security for costs. The defendant could not be taken by surprise. The court would not allow that. For if the motion had been granted, and the use entered, the court would have continued the cause, or granted time for the defence. It is not contended, that mere

amendments of pleadings are proper subjects of appeal. But in this case, the replication was filed with the motion to strike out and change the use, for the purpose of shewing the court, that the *administrator de bonis non* had an interest in the bond, and might put it in suit; or avail himself of the pending action, as being "entitled to the beneficial interest;" and not being denied, or in any manner called in question in the court below, it must, itself, be considered as evidence of all it contains. It must be conceded, that the law of amendments in pleading, was administered with unusual vigor in this case. *Mr. Evans,* in his work on *Practice,* page 248, says : "Modern judges lean so universally in favor of amendments, that we scarce remember a question made, whether an amendment was proper, except in the case just mentioned; and none in modern times, in which the amendment was not permitted." The plaintiff first filed a replication, proposing to recover on the interest that *John T. Boone* was supposed to have in the estate of *Levin Boone.* On the argument of the demurrer to that replication, the court intimated, that *John T. Boone* had no title; but that the right to sue, was in the *administrator de bonis non.* The plaintiff having withdrawn the joinder in the demurrer, moved to substitute the *administrator de bonis non,* as the equitable plaintiff, and to be permitted to conduct the pleadings according to the interest of the administrator. This the court refused, because the suit was not brought in the name of the State, for the use of the *administrator de bonis non.* Now, if the motion had been granted, and the case had gone ultimately against the defendant, the propriety of changing the use, with all other questions on the record, might have been revised on his appeal. But, by refusing the motion, the court summarily decide the whole controversy, and adjudge, that the State cannot prosecute the case for the use of any person, but the first *cestui que use.* If it is the entry of the use, and not the assignment of the breaches, that shews the right to sue; and if a person cannot recover as beneficial plaintiff, unless the use be entered when the writ issues, it follows, that if no use be entered at that time, no recovery can be had in that suit. This is certainly a conclusion against the opinion in *State vs.*

State, use of Boone, *vs.* Bryan, Ex. of Burch.—1845.

*Dorsey et al.*, 3 *G. & J.*, 93, where it is said, the use need not be entered at all. Two suits for greater caution might have been instituted at the same time, one in the name of the State, for the use of *Boone*, as legatee, and the other for the use of the *administrator de bonis non*. But it is more convenient and less vexatious, to have one suit in which the pleadings may be so varied, as to allow a recovery in any aspect in which the State may shew a right to recover. And since the decision of the case of *State vs. Dorsey et al.*, there can be no objection successfully made to this course, for there the writ issued for the use of one corporation, and judgment was rendered for the use of another. This is more than a question of amendment of the pleadings. The motion to change the use, was the only mode in which the rights of the *administrator de bonis non* could be brought before the court. It involved the question of his right to sue the bond, and when decided for the defendant, the case was gone. Any judgment which finally disposes of the case, and settles the right of a party to recover, is the proper subject of appeal, whether the decision be for or against the recovery. When the motion was overruled, the case stood as if there had been no joinder in the demurrer. The State was laid under a rule joinder, and for not complying, judgment of *non pross.* was entered. If the plaintiff had joined again in the demurrer, it would have been, in the face of the intimation of the court, against the right of *John T. Boone* to sue the bond; so that the only remedy was an appeal from this judgment on a new suit on the bond, for the use of the *administrator de bonis non*. Relying on the case in 3 *G. & J.*, 75, the appellant preferred the appeal to a second suit on the bond, then barred by limitations.

It is submitted, that the court will reverse the judgment of *non pross.*, and the judgment rejecting the motion to change the use, &c., as made by the appellant, and send the cause to the county court on a *procedendo*.

The record seems to shew, that the defendant rejoined and demurred to the replication at the same time. This is evidently a mistake in the record. The defendant must have withdrawn his rejoinder before he entered the demurrer. I have no distinct recollection of the fact, but such is my impression.

By T. S. Alexander for the appellee.

The writ, in this case, was issued in the name of the State of *Maryland*, endorsed at the instance and for the use of *John T. Boone*, against the executor of a surety for *Singleton Townshend* and *Maria Boone*, on the bond given by them for the performance of their duties as administrators, with the will annexed, of *Levin Boone*, deceased. The replication to the plea of general performance states, that the testator bequeathed the residue of his estate to his wife, the said *Maria Boone*, for life ; and after her death, to *George Boone* and *Nicholas Boone*, to be equally divided between them, and to the heirs lawfully begotten of their bodies ; and for want of such heirs, to *William Boone* and *John Boone*, and their heirs and assigns, as tenants in common. That *George Boone* and *Nicholas Boone*, died in the life time of *Maria Boone*, without heirs of their bodies; and that *William Boone*, also, died without issue ; whereby the said residue devolved on the said *John*, at whose instance and for whose use this action is brought. That the goods and chattels of the testator in the hands of his administrators, after payment of all debts and particular legacies, amounted to the sum of $1000; which was distributable to the said *Maria Boone* ; and that the said *Maria* has lately died. And the breach assigned, is the non-payment of that residue to the said *John*. The defendant demurred to this replication. And thereupon the plaintiff moved the court, "to strike out the use of *John T. Boone*, and to enter this cause for the use of *William H. Tuck, administrator de bonis non*, with the will annexed, of the deceased *Levin Boone*," and for leave to amend "the replication, by stating in substance, that the original administrators had sold the personal estate of their testator, "and had passed an account of their administration ; by which there remained due to the said estate, after allowing certain disbursements, the sum of $907.02;" and that the said original administrators died, "without completing their administration, or proceeding further therein, after passing said account, and leaving unadministered the said balance; and leaving debts and legacies unpaid to the amount of $1000."

The court overruled the motion, and the plaintiff appealed from said decision.

Whereupon the defendant prays, the plaintiff may be required to join in demurrer with him. The rule was accordingly laid. But, " the said plaintiff being solemnly called, comes not, neither is its writ, aforesaid, against the said defendant further prosecuted; but makes default."

A judgment of *non suit* is therefore entered, and the plaintiff appeals from this judgment.

This case is therefore before this court, on appeals from two distinct judgments; the one interlocutory, overruling the motion to amend the writ and replication; and the other final, entering judgment of *non suit*. And the question is, whether in the rendering of those judgments, or either of them, there is error, which may be corrected on those appeals, or either of them?

On an appeal from a judgment of *non suit,* the appellant cannot complain of error in the original record. He is required to shew mistake in entering up the judgment. 2 *Bing*. 326. *Evans vs. Sweet, in* 9 *Engl. Com. Law Rep.* 420. And in *Kempland vs. Macauley,* 4 *T. R.* 436, where a writ of error was brought on a judgment of *non-suit, Buller,* justice, remarked, " here it is apparent, that there can be no error, of which the plaintiff can avail himself: for if the record were manifestly erroneous, the plaintiff, who has made default by suffering a *non suit,* can never have a judgment afterwards in his favor." In this State, since the act of 1825, *chap*. 117, error in the judgment is to be shewn, only where it has been entered after demurrer, or motion in arrest of judgment. 5 G. *& J.,* 102, *Sasscer vs. Walker*. No point or question relating to, or involved in the final judgment of *non suit,* is presented by the record, shewing the default of the plaintiff. Hence it may be affirmed with confidence, that in this State no appeal will lie from a judgment of *non suit*.

2. If an appeal will lie from a judgment of *non suit,* it is clear, upon the preceding authorities, that the appellant must shew error in the proceedings anterior to the judgment, and on which the judgment was founded. He must show there was no legal default on the part of the plaintiff. For the existence of default is the only point concluded by the judgment.

Now in this case, the record states, that being solemnly call-ed, the plaintiff came not; but made default. And therefore it was considered, that it take nothing by its writ. The record is conclusive, that the plaintiff was called, and did make default; and the judgment was entered, because of the failure of the plaintiff to answer when solemnly called. In this, as in every other stage of the cause before verdict, the plaintiff has the option of abandoning his suit. The plaintiff determined his option, by standing mute when regularly required to speak. The judgment, then, was the legal effect of his own volun-tary act.

The argument filed on the part of the appellant, attempts to connect the judgment of *non suit*, with the anterior proceed-ings. And because he could not answer the law of the demur-rer, and the court would not permit an amendment of the plead-ings, it is supposed, the plaintiff had no other alternative but to *non suit* his action. This is not so; he might have joined in demurrer. If the judgment had been against him, and if the refusal of the court below to permit an amendment, may be reviewed in this court, then, by an appeal from the judgment on demurrer, he might have corrected all errors, not only in the judgment itself, but in the refusal of the court to permit the proposed amendment; and likewise, in all other anterior pro-ceedings. This ought to have been his course, if he intended to question the proceedings of the court below. I have already said, that he had the option of submitting to a *non suit*. If he had permitted a judgment to be entered against him on demur-rer, he must, as an equivalent for his chance of reversing that judgment, have given to the defendant an equal chance of con-cluding further litigation by affirming the judgment. By sub-mitting to a *non suit*, he retained his right to commence a new action. Thus it appears, that the *non suit* was the conse-quence of a proceeding on the part of the plaintiff, advisedly adopted:—adopted with the view of avoiding the evil of an un-favorable judgment against him on this record. He withdrew his cause from the court below, voluntarily, for the purpose, it may be, of renewing the litigation in another form. Is he at liberty to retract his election? Or can he impose on this appel-

State, use of Boone, *vs.* Bryan, Ex. of Burch.—1845.

late jurisdiction, the duty of determining questions, on which no judgment was pronounced by the court below?

Let us again assume the judgment was entered, because of the failure of the plaintiff to join in demurrer, in compliance with the rule laid for that purpose. His default, in fact, will be established by the record. And the only subject for enquiry, will be, whether the rule was regularly laid? It was a regular sequence from the demurrer; unless the progress of the action was intercepted, by the entry of the appeal from the judgment, overruling the plaintiff's motion to amend. To that appeal, as a supersedeas, there are two conclusive objections : *First,* the judgment was interlocutory; and from an interlocutory judgment no appeal will lie. The appeal was, therefore, to say the least of it, premature. *Second,* no bond was given to prosecute that appeal; and a bond is necessary to stay execution, even of a final judgment. Either of those reasons would be sufficient to show, that the cause was to progress after the appeal, in the same manner, precisely, as if no appeal had been entered.

Again, let us associate the judgment of *non suit,* with the refusal of the court to permit an amendment of the pleadings. Was there error in such refusal, which this court may correct?

I insist:—1st. That an appeal will not lie, in any case, from the refusal of the court below to allow an amendment. 2d. That in this particular case, the court acted rightly, in overruling the motion made for amendment.

1. The motion for amendment is addressed to the discretion of the court of original jurisdiction; and it is a general rule, that the discretion of the inferior court is not to be controlled on appeal. An appeal will not lie, from an order granting or refusing a new trial. 5 *H. & G.,* 174, *Anderson vs. the State.* 2 *H. & G.,* 79, *Wall vs. Wall.* Nor from the refusal of the court to strike out a judgment by default. 6 *H. & J.,* 151, *Hawkins vs. Jackson.* Or grant a continuance. 6 *Cranch,* 206, *Marine Ins. Co. vs. Hodgson.* Nor the allowance or disallowance of an amendment. 11 *Wheat.,* 280, *Chirac vs. Reinecker.* Other cases, illustrative of the general rule, may be found collected in 2 *United States Digest,* 160. It is conceded by the argument filed on the other side, that the refusal of

the court to allow an amendment, is not, ordinarily, a subject of appeal. But this case is supposed to be taken out of the operation of the general rule, by the circumstance, that the motion was accompanied by a replication, which showed another title in some other person, to commence another action on the same bond. The peculiar fitness of this argument, as the basis of an exception to the general rule, is not perceived. No injury was done to this other person by rejecting his application; since, by his own showing, he may put the bond in suit for his own benefit. In every instance, the amendment is to be allowed for advancement of justice. In every case, the court may require to be informed, of the particulars of the amendment, and of the probability of sustaining the amended case by evidence. And where such statement is not called for, it ought to be assumed, that the motion to amend involves a grave question of law. There is not, therefore, such peculiarity in the present case, as is suggested. In *Anderson vs. The State*, the motion for a new trial was founded on a supposed misdirection of the court to the jury. But the appeal was dismissed. A yet stronger case was brought up, some years ago, from *Charles* county. The defendant, I believe, excepted to an opinion, expressed by the court during the trial. The verdict being against him, he moved for a new trial, on some ground connected with the conduct of the jury. The court refused to entertain the motion, unless he would abandon his exception. He appealed. His counsel here, admitting, that an appeal would not ordinarily lie, from the refusal of the court below to grant a new trial, insisted, that the court was bound to receive and consider his motion; that the *Constitution* secured to him the benefit of a *fair* trial by an *impartial* jury; and that if he considered himself aggrieved by the ignorance or partiality of the jury, it was the bounden duty of the court to *listen* to a temperate statement of his grievance. The error assigned in this case, was not in the exercise of discretion by the court below, but in its refusal to excercise its discretion. And, I presume no one would hesitate to say, that the conduct, or rather, misconduct of the court, was flagrant and inexcusable. Yet this court held, it was incompetent to administer

relief. The whole jurisdiction over the subject, was confided to the county court, and with the exercise, or refusal to exercise its discretion, this court could not interfere. Now the case to which I refer, is infinitely stronger than the case before the court. In the former case it is clear, that a constitutional right of the suitor was violated; a constitutional duty of the court was disregarded. In the present case, there is nothing to show that the court below did not exercise a sound judicial discretion, in refusing the proposed amendment.

2. Let us assume, that the refusal of the court to suffer the amendment, is a proper subject for revision, and that the record discloses all the facts and circumstances, by which the correctness of the decision of the court below, is to be tested. Is there error in that decision upon the record?

In this country amendments are liberally allowed, more so than in *England.* But there must be some limits, beyond which, an amendment cannot be extended. In an action brought by *A* against *B*, there cannot be an amendment, which would warrant a judgment in favor of *C* against *D*. And in an action of ejectment, it would be against principle to admit the lessor of the plaintiff to recover damages for an *assumpsit.* The act of 1809, *chap.* 153, to which our practice is to be traced, allows such amendments, as may bring the merits of the question between the parties fairly to trial. The parties are not to be changed; nor can the question be changed. Such modifications of the pleadings, and other proceedings are to be allowed, as will fairly present the original question, as between the original parties. The original writ cannot be amended. It is not a part of the pleadings, nor of those other proceedings, which may be amended under the provisions of the above act. To alter the writ would be to alter the question between the parties, 7 *H. & J.* 257, *Stoddert vs. Newman;* and therefore, where the party originally founded his cause of action on a testamentary bond, he was not permitted to amend, by relying on a guardian's bond. 4 *Gill & Johns.*, 385, *State vs. Green.*

Assuming then, that the person at whose instance, and for whose use the action is brought, is the party plaintiff; and that

the replication discloses the question to be tried, it would be against principle, and the provisions of the act of 1809, to admit the substitution of another *cestui que use,* claiming under another title. To avoid this conclusion, it is argued, that the State is the party plaintiff, and that the writ discloses the question at issue between the parties. If this was so, then one recovery on the testamentary bond would bar any other action on the same bond; which is against experience. Again, we are told that there is a complete analogy between the case of an action on a private bond, brought in the name of the obligee, for the use of another, and of an action on a testamentary bond, brought in the name of the State, for the use of a legatee, or other party interested in the administration; and that as the use entered in the one case may be altered or amended, pending suit, without prejudice to the plaintiff's right of recovery, a like alteration may be made in the other case. These positions derive color from *dicta,* which are to be found in the opinion of the late chief judge, in 3 *Gill & Johns.* 75, *State vs. Dorsey.* It is the exclusive province of this court to determine, how far it is bound by opinions expressed by the judge, charged to deliver its judgment, where such opinions are not material to the judgment, or are used for illustration and argument merely. We have high authority for affirming, that " an opinion given in court, if not necessary to the judgment given of record, but that it might have been as well given if no such, or a contrary opinion had been broached, is no judicial opinion." If I can show then that the *dicta* relied on, were not called for by the circumstances of the case, and were unnecessary to the determination of the points which were really before the court, I may, without the imputation of intentional disrespect to this court, venture to state the ground on which I would question the authority of those *dicta.* *Vide, Ram on Legal Judgment,* 36. What then was the question in the case of the *State vs. Dorsey?* An action had been brought on a collector's bond in the name of the State, at the instance and for the use of the levy court of *Baltimore* county, at that time the fiscal representative of the county; and the members of which were appointed by the executive. Pending

the suit, an act was passed changing the name of the levy court, into that of commissioners of *Baltimore* county; and transferring the power of appointing commissioners from the executive to the people. The question was, whether the suit could be continued by the commissioners? And the affirmative of this question was to be sustained, by showing, that the commissioners were, in law, identical with the levy court—succeeding to the same functions, rights, and liabilities; and enforcing the same legal title, for the benefit of the same constituency. They were the successors of the levy court, in being at the time the action was brought; bearing to the levy court a relation as intimate, at the least, as the heir to his ancestor, or the executor to his testator  Here was the argument conclusive on the subject. All therefore, that ensues, in relation to the analogy between an action brought on a private bond, in the name of the obligee for the use of another, and an action brought on a testamentary bond for the use of one interested in the administration; and to the necessity for and the effect of an entry of the use, are mere *prolata*, not concluding to the judgment, or material to its correctness.

I shall now proceed to show, that whilst there may be points of agreement between the two cases, there are also points of difference; and that the learned judge in his opinion quoted by the other side, has not expressed himself with his accustomed caution and accuracy. In the first place, the learned judge is in error, in supposing there is similarity in the nature of the interest to the *cestui que uses* in the two cases. An assignment of a private bond, conveys no legal interest to the assignee. It operates, simply as a power irrevocable, to the assignee to receive the money; and to sue in the name of the obligee for its recovery. There is no law requiring the use to be entered on the docket or record; and the entry is only made as notice to all parties of the beneficial interest of the assignee. It is, by motion, addressed to the equity of the court, that the rights of the assignee are enforced. On the other hand, the act of 1798, chap. 101, confers on the party, aggrieved by the conduct of the executor, a legal right to put his bond in suit. And the act of 1794, chap. 54, sec. 10, directs the clerk,

before issuing the writ (in any suit on a testamentary bond,) to endorse thereon the name of the party, at whose instance, and for whose use the suit is instituted. The endorsement of the use is thus made a part of the writ. A writ issued by the clerk, without the endorsement, would be merely void, or at the least voidable, as irregularly issued. It is incorrect therefore to say, that "there is no necessity for the purposes of the suit to enter the use." The duty is imperative.

Again, the learned judge is in error, in running parallels between the form and effect of the proceeding in the two cases. And first, as to form. In the case of a private bond assigned, the writ issues in the name of the obligee; the declaration counts on his title, and the pleas attempt to bar his title. The assignment is not noticed in any part of the record. Payment to the assignee must be pleaded as a payment to the obligee. A release by the assignee, could not be pleaded at all. In the case of a testamentary bond, the declaration or replication must show title in the person, at whose instance and for whose use the action is brought; and every plea or rejoinder affects to bar that title. In every stage of the pleading, the title of the *cestui que use*, (improperly so called,) is affirmed or denied. The title of the State, is recognised as technical only. Then, again, as to the effect. To an action on a private bond by the obligee, for the use of $A$, the defendant may plead a recovery in an action, formerly brought by the obligee, simply, or for the use of $B$. A recovery, in one action, concludes the question of title, and extinguishes the right of action in the bond. But a recovery on a testamentary bond, in the name of the State, at the instance and for the use of $A$, cannot be pleaded in bar of a second action on the same bond, in the name of the State, at the instance and for the use of $B$. Nay, a recovery by $A$, counting on his title as a creditor, would not bar a second action on the same bond, in which he would count on his title as legatee. A recovery on a testamentary bond, concludes only the person at whose instance, and for whose use, the action was brought, and in respect only of the title in question, by the pleadings in that action. With this brief explanation of the grounds of objection to the *dicta,* expressed by

the learned judge, in 3 *Gill & John.*, I conclude, that in an action on a testamentary bond, the endorsement is an essential part of the writ; that the person, at whose instance, and for whose use the action is brought, is the party plaintiff; that the title of that person, as disclosed by the pleadings, is the question at issue between the parties; and, consequently, that the act of 1809, neither authorises nor allows a substitution of one name for another in the endorsement of the writ, nor an amendment of the pleadings, for the purpose of raising a new question on a title, in which the person, at whose instance, and for whose use the writ was issued, has no interest.

I have thus attempted to show, that the court had no authority to allow the amendment asked for. I will next endeavor to prove, that the authority, if it existed, ought not to have been exercised. Every suit brought, should have a definite object. The plaintiff should state his cause of action with such certainty, as to enable the defendant to decide, whether he would admit or contest it. It would be wrong to permit the plaintiff to bring his neighbor to answer one charge, which is groundless, and then recover against him for a cause, which perhaps, he would not have denied. Whatever may be our practice in this respect, there must, in principle, be some limit to this right of amendment. If it can be shown, that the action was really brought to recover a bond for $500, given in 1840, would it be right to permit the plaintiff to recover on a bond for $1000, given in 1842? After the defendant has successfully defended himself against *Boone*, at whose instance, and for whose use the suit was brought, would it be right to subject him to further litigation in this same suit, at the instigation of *Tuck*, who claims a distinct right in a different character? *Boone*, as residuary legatee, claims the clear balance remaining, after a complete administration. *Tuck*, as administrator, claims the proceeds of the estate, as in the hands of the original administrators, unadministered. It is not even shown, that *Boone* has any beneficial interest in the result of *Tuck's* action. On the contrary it is averred, that the debts and particular legacies outstanding, will absorb the entire estate. A suit brought by *Boone*, in his own right, and for his own

benefit, is, therefore, to be continued by *Tuck,* for the benefit of other persons. Is there equity in this demand, in respect either of *Boone* or the defendant? Will the court say, that our right to recover the costs incurred by us, in resisting *Boone's* claim, shall abide the event of the new litigation in which we are to be engaged with *Tuck?* Or, in the event of our ultimate recovery, will the court restrain us from levying our entire costs from *Boone?*

If this court is to revise the discretion of the county court, it will notice every circumstance which may have influenced the judgment of the court below. It will notice that *Mr. Tuck,* the present *administrator de bonis non,* was the attorney who sued out the original writ, for the benefit of *Boone.* We have the guarantee of his established character, that the writ was advisedly issued, and after evidence, satisfactory to him, that the estate had been duly administered. Is it possible that he, being the *administrator de bonis non* at the time, would have yielded the right to *Boone,* without due examination? If the force of this inquiry is sought to be evaded by the suggestion, that his letters were granted after the commencement of this suit, I reply, that the title which is to continue this action, must have existed at the time the action was commenced. My own suspicion is, that the letters were granted after commencement of this suit, and after the court had decided, that the residue vested in interest and possession of the residuary legatee for life; and that the remedy of the legatee in remainder, was to be asserted by action against her representative. An administration *de bonis non* was then resorted to, in the hope that the defendant might be unable to prove a technical administration, which would exclude the technical title of the present administrator. There is no affidavit of merits. There is no pretext of merits set out in the record. Having defeated one title, another rises up, as it were out of the ruins of the first. If we defeat this other, what security have we that a third claimant will not present himself in the person of a creditor? and a fourth in the person of a particular legatee? *Interest reipublicæ ut sit finis litium.* Let this false clamor cease. Give us the costs of the defence we have already made. If any other

should feel disposed to renew the contest, we shall then be the better prepared to meet him.

By the Court—

APPEAL DISMISSED.

---

John Wells, William Miller, and Levin P. Clarke, *vs.* James Biscoe, claimant of property attached as of Samuel B. Hickox.—*December* 1845.

A non-resident had goods in the State, which he assigned, *bona fide*, in payment of a precedent debt, to a resident; and the warehouseman, with whom the goods were deposited, accepted the order of the assignor to deliver them to the assignee. A few days after this, they were attached, as the property of the *non-resident* assignor. The assignee appeared in the cause and claimed them; Held, it was not necessary that the assignment should have been recorded, under the act of 1834, chap. 79, sec. 3, to perfect the transfer.

Appeal from *Baltimore* county court.

On the 11th October 1841, the appellants sued out an attachment against the goods of *S. B. Hickox*, which was laid upon a lot of pig iron, valued at $540, and for which, *Ellicott & Brothers*, gave a receipt to the sheriff, as left by him on storage with them.

At the return of the writ, *James B. Biscoe* appeared, and claimed the iron as his own property; interposed such claim against the condemnation thereof, and ruled the plaintiffs to reply to his claim.

At a subsequent term, the plaintiff moved the county court to enter a judgment of condemnation, as for want of a plea to the attachment, which that court refused; and then the plaintiffs replied, that the iron was not the property of the claimant; on which issue was joined.

The case was then submitted on the following statement:—

It is admitted, in this case, that the iron in controversy was the property of *Samuel B. Hickox*, the defendant in the original suit, and was placed by him on storage with *Messrs.*